348 So.2d 13 (1977)
BOARD OF COUNTY COMMISSIONERS OF METROPOLITAN DADE COUNTY and Dade County, a Political Subdivision of the State of Florida, and Frank C. Gardner, Appellants,
v.
Joseph V. Bia LOWAS et al., Appellees.
No. 76-1739.
District Court of Appeal of Florida, Third District.
June 14, 1977.
Rehearing Denied August 3, 1977.
Horton, Perse & Ginsberg and Mallory H. Horton, Miami, Stuart L. Simon, County Atty., and Stanley B. Price, Asst. County Atty., for appellants.
Prunty, Ross, DeLoach & Olsen, John W. Prunty, William Bruce Israel and Ray M. Watson, Miami, for appellees.
Before PEARSON, BARKDULL and HAVERFIELD, JJ.
BARKDULL, Judge.
Some time prior to July 20, 1973, the appellant, Frank Gardner, and others determined to form a private corporation for the purpose of promoting a commercial tennis *14 club facility. In furtherance of this venture, they caused Sunset Tennis Club, Inc., to be incorporated in July of 1973. They set about to find a suitable site for the club and, after examining some twenty parcels, Frank Gardner purchased approximately four acres of property upon which a residence was constructed. This was in the unincorporated area of Dade County in a EU-1 zoning classification, which provides for single family residences; minimum one acre. This zoning classification is one of the highest residential type zoning classifications under the Dade County Code and has been on the subject property and its surrounding area in excess of twenty-five years. The area in question is a fully developed exclusive one-acre residential area for approximately one mile surrounding the property.
The property was acquired by Gardner on March 13, 1974, and an application for a change in zoning from EU-1 Estate to BU-2 Business (including liquor), together with a request for unusual use special exceptions and numerous variances, was filed and was set for public hearing on June 25, 1974. This proposed tennis club was to be built in accordance with plans submitted to the Zoning Department, dated January 25, 1974. Apparently, upon this application being considered, it was met with substantial opposition from the surrounding neighbors and the application was withdrawn. It was thereafter modified and resubmitted in July 1975, and sought a change from EU-1 Estate zoning for an unusual use to permit a tennis court and variance relative to certain setbacks and fence height requirements. The Planning Department recommended approval with conditions, based on a resubmission of plans submitted dated June 30, 1975. The Zoning Director of Dade County recommended that the application should be denied with prejudice in its entirety.[1] The matter occurred before the Zoning Appeals Board (hereafter referred to as ZAB) on February 2, 1976. The ZAB found that the request for unusual use would not be compatible with the area and, on said date, denied the request for the unusual use and variance.[2] [It is noted here that the variance would only have been applicable in the event of the granting of the unusual use, and no further reference will be made to the variance.]
Thereafter, Gardner pursued an appeal from the decision of the ZAB to the Board of County Commissioners. In seeking a *15 repeal of the entire decision of the ZAB, the application for appeal reads in part as follows:
* * * * * *
"Application, or part of Application Appealed (Explain):
"Entire Appealable Application
"appeals the decision of the Dade County Zoning Appeals Board with reference to the above subject matter, and in accordance with the provisions contained in Chapter 33 of the Code of Metropolitan Dade County, Florida, hereby makes application to the Board of County Commissioners for review of said decision. The grounds and reasons supporting the reversal of the ruling of the Zoning Appeals Board are as follows:
"(State in brief and concise language)
"In support of this appeal, the Applicant would state:

"The testimony and exhibits presented before the Zoning Appeals Board concerning the above revealed that the facility planned by the Applicant would meet all of the criteria as stated in Section 33-311 of the Metropolitan Code of Dade County. In addition, the Applicant has shown that his request would have no adverse effect on the present or future development of the immediate neighborhood and that said request is compatible with same.
"Wherefore, the Applicant asks that the County Commission reverse the ruling made by the Zoning Appeals Board and grant the Applicant's request." [emphasis added]
* * * * * *
By this application and its very wording, Gardner sought review of the decision of the ZAB and sought a reversal, because the testimony and exhibits before the ZAB demonstrated that his application for unusual use permit met all the criteria of Section 33-311 of the Code of Metropolitan Dade County, and that the request would have no adverse effect on the present or future development of the immediate neighborhood.[3]
In due course, the petition for appeal came on for consideration before the Board of County Commissioners. At that time, the Board of County Commissioners undertook a de novo hearing, without any review of the evidence or exhibits introduced before the ZAB. At this hearing, the applicant produced argument by an attorney; unsworn testimony by himself, an architect, an engineer, and property owners not directly in the area to be affected by the planned facility urging its approval. The vast majority of the people living within 500 feet of the property involved either testified or were shown by exhibits to oppose the application; they were also not sworn and were represented by counsel. There was no attempt by the Board of County Commissioners to review the decision of the ZAB, as requested by the petition of appeal filed by Gardner. There was no attempt by Gardner forces to show why the decision of the ZAB was not supported by substantial competent evidence; there was no attempt to show that the evidence produced before the ZAB met the requirements of Section 33-311(d) of the Code of Metropolitan Dade County to justify an unusual use. At the conclusion of the public hearing, the Board of County Commissioners adopted a resolution overruling the decision of the ZAB and granted the request, subject to certain conditions.
The appellees, as aggrieved property owners, pursued a petition for writ of certiorari to the circuit court.[4] During the pendency of this proceeding, the property owner [Gardner] was permitted to intervene in this proceeding. The circuit court, *16 after reviewing the evidence and exhibits tendered at the hearing before the Board of County Commissioners and following review of the briefs and argument of counsel, entered an order in effect quashing the resolution reversing the decision of the ZAB and granting the unusual use.[5] Thereafter, the Board of County Commissioners and Dade County filed a notice of appeal, which was joined in by Gardner. Upon the appeal, the County and Gardner urge that the circuit court erred in its order granting the writ of certiorari in accepting any of the grounds urged by the petitioners. Following the matter being briefed, it was set for oral argument. Although not raised by the parties during oral argument, the court became concerned as to the authority of the Board of County Commissioners to conduct a de novo hearing and directed counsel for the respective parties to submit briefs demonstrating this authority.
The briefs and the several amended Ordinances of Dade County [attached as an Appendix] have been examined. Initially, we recognized that these zoning ordinances of the County are not any model of clarity. It is clear, by Section 33-312, that if no appeal from a ruling of the ZAB is made, its decision is final and effective. It is also clear, by Section 33-312, that as to regulatory matters the decision of the ZAB is merely advisory. It also appears, by Section 33-313, that an aggrieved party to a ZAB decision may seek an appeal of this decision to the Board of County Commissioners [this is what was done in the instant case and what was sought was a reversal based upon the testimony and exhibits before the Board]. Generally, through Sections 33-302 through 33-316, it appears that the decisions of the ZAB in non-regulatory matters and district boundaries are final unless reversed by the Board of County Commissioners, which would appear to mean on the record as made before the ZAB. Section 33-313.[6] Of course, in regulatory matters, as well as district boundary changes, Section 33-314(a) provides that it is the duty of the Board of County Commissioners to directly hear and act upon such applications. It would appear, by reference to these sections, that in all matters except those exclusively reserved for an initial public hearing before the Board, that the decisions of the ZAB would be final unless, upon appeal, the Board of County Commissioners should find that the evidence presented before the ZAB did not support its ruling. However, Section 33-315 is most ambiguous and reads, in part, as follows:
"If an application is before the board of county commissioners pursuant to this article, be it by way of appeal, recommendation or otherwise, it shall have authority to consider and take final action upon any and all matters and requests contained in the application, any other provisions in this article notwithstanding. In making any final decisions, the commission shall be guided by the standards and guides applicable to the zoning appeals board or as otherwise specified in this chapter. It shall consider all relevant and material evidence offered to show the impact of the development upon Metropolitan Dade County. * * *" [emphasis added]
* * * * * *
Apparently, it can be argued that the Board of County Commissioners not only can receive evidence in those matters which must initially be brought before it [regulatory and district boundary changes], but may also receive evidence when considering a matter on appeal from the ZAB. It is *17 obvious that if this interpretation is correct, both applicants and aggrieved citizens in many zoning controversies will be required to face two adversary hearings, and Section 33-313 is in conflict with Section 33-315. If this is the intention of the legislative fathers of the County, it should be spelled out with more clarity. However, because of our ultimate decision in this cause, we will accept the right of the County, in this instance, to have taken testimony.
Having attempted to outline the procedure as provided by the Code of Metropolitan Dade County, we now turn to the petition of appeal by Gardner. As previously indicated, he sought a reversal of the ZAB decision based upon a review of the testimony and exhibits presented before the said Board. It was impossible for the County Commission to base a reversal on the ground as urged because there is no showing that the evidence and exhibits produced before the ZAB were ever brought to the attention of the Board of County Commissioners.
The word "appeal" has a special meaning: it means to review the actions of a lower court or tribunal or agency. It is a plea to a higher supervisory body to reverse, alter, or modify a decision by a subordinate agency upon the record as made before that agency; generally, upon the proposition that the initial determination was not in accordance with law or regulations and/or that the decision was arrived at through bias or prejudice or that the decision of the subordinate agency was not supported by substantial competent evidence. So, if we were limited to reviewing the action of the Board of County Commissioners solely as an appellate body, obviously its decision was in error. The circuit court was correct because the Board made no attempt to review a record before the subordinate body. But, as previously pointed out, Section 33-315 of the Code of Metropolitan Dade County apparently authorizes [at an appeal proceeding] the receiving of additional evidence by the Board and that it did in the instant matter. However, it did not consider, as requested by the appellant or as indicated by the nature of an appellate proceeding, the evidence and exhibits tendered before the ZAB. Obviously, the efforts of the ZAB and its decision must bear some weight.
The Board of County Commissioners is not authorized to ignore the ZAB decision, but is only authorized to consider an appeal therefrom. Even though it may be permitted to receive additional evidence on the appeal, it still would have to measure the decision of the ZAB at the time it made its decision and such additional evidence as it may have received before the Board. Not having had the evidence before the ZAB brought to the attention of the Board of County Commissioners, it did not have the entire matter before it and, therefore, acted beyond the terms of its own code when it reversed the action of the ZAB. The Board of County Commissioners departed from its own legal requirements and, therefore, the actions of the circuit judge were correct in quashing the resolution of the Board of County Commissioners reversing the order of denial by the ZAB.
An "unusual use" is defined in the Code of Metropolitan Dade County as follows:
"Sec. 33-311(d)

"Special exceptions, unusual and new uses. Hear application for and grant or deny special exceptions; that is, those exceptions permitted by the regulations only upon approval after public hearing, new uses and unusual uses which by the regulations are only permitted upon approval after public hearing; provided the applied for exception or use, including exception for site or plot plan approval, in the opinion of the zoning board, would not have an unfavorable effect on the economy of Dade County, Florida, would not generate or result in excessive noise or traffic, cause undue or excessive burden on public facilities, including water, sewer, solid waste disposal, recreation, transportation, streets, roads, highways or other such facilities which have been constructed or which are planned and budgeted for construction, are accessible *18 by private or public roads, streets or highways, tend to create a fire or other equally or greater dangerous hazards, or provoke excessive overcrowding or concentration of people or population, when considering the necessity for and reasonableness of such applied for exception or use in relation to the present and future development of the area concerned and the compatibility of the applied for exception or use with such area and its development."
To be entitled to an unusual use, the applicant must show [among other things] that the use intended is compatible with the neighborhood and will not destroy the character thereof. Section 33-311(d). From the evidence that was produced before the County Commission, it is apparent that what the applicant attempted to do, with all candor, was organize a tennis club for profit, consisting of at least eight tennis courts, a clubhouse, a youth club, a swimming pool, and a pro shop in an exclusive one-acre estate district. Regardless of its nomenclature, the impact of such a request, if granted, would have been totally out of character with the neighborhood,[7] and, in effect, amounted to a rezoning of the property, which was what the applicant originally asked for. He recognized, in his original application, that it was a business; a commercial venture. All that was eliminated between the original application and the amended application was the reduction of the number of tennis courts from ten to eight, elimination of the lighting and the right to sell intoxicating beverages. The club expected to have 160 family members, a swimming pool, an active youth program, teaching professionals, sales at a pro shop and, by its very nature, would have generated traffic, noise and activity, which are not compatible to an exclusive one-acre residential area [which was the finding of the ZAB].
It appearing, in fact, that the applicant was seeking a zoning change under the guise of an unusual use permit, the action of the Board of County Commissioners was in effect "spot zoning", and the trial judge was eminently correct in quashing the action of the Board of County Commissioners upon this theory, if none other. Elwyn v. City of Miami, 113 So.2d 849 (Fla.3rd D.C.A. 1959); Friedland v. City of Hollywood, 130 So.2d 306 (Fla.2nd D.C.A. 1961); Board of Adjustment of City of Fort Lauderdale v. Kremer, 139 So.2d 448, (Fla.2nd D.C.A. 1962); 35 Fla.Jur., Zoning Laws, § 16.
Therefore, for the reasons above stated, the final order granting writ of certiorari be and the same is hereby affirmed.
Affirmed.

APPENDIX

 "ARTICLE XXXVI. ZONING
 PROCEDURE
"Sec. 33-302. Definitions.
 "In construing the provisions hereof and each and every word,
term, phrase or part thereof where the context will permit the
definitions provided in Section 1.01, Florida Statutes, and
Chapter 33 of the Code of Metropolitan Dade County, Florida, and
the following additional definitions, shall apply:
 * * * * * *
"(k) Record. The word `record' when pertaining to the record of
any board shall mean and include any application, exhibits,
appeal papers, written objections, waivers or consents,
considered by such board, transcript or stenographic notes taken
for the department at a public hearing held before such board, if
any, the board's minutes and resolution showing its decision or
action, and if the record of a lower board is transmitted to a
higher board, the record of the higher board shall include that
of the lower board. The word `record' shall also include any and
all applicable portions of Chapter 33 of the Code of Metropolitan
Dade County, Florida, the report and recommendations of the
planning director, building and zoning director and the
developmental impact
*19 committee; the comprehensive development master plan for
Metropolitan Dade County, Florida; and Ordinance No. 75-22, or as
amended, or applicable neighborhood or area studies or plans
approved by action of the board of county commissioners, as well
as applicable district boundary maps, aerial photographs and
final zoning resolutions. It shall also include the record made
as a result of any previous zoning application on the same
property. The clerk of the county commission shall identify all
exhibits used or referred to at the zoning hearing. All exhibits
so identified or introduced shall be a part of the record."
 * * * * * *
"Sec. 33-304. Applications.
"(a) All requests for * * * changes in the zoning regulations, *
* * unusual uses, * * * and variances, shall be made by filing an
application therefor with the director on application forms
prescribed by him or by rule and regulation of the developmental
impact committee. * *"
 * * * * * *
"Sec. 33-306. Zoning appeals board  Establishment.
"(a) There is hereby established a zoning appeals board composed
of nine (9) members appointed by the county commission. * * *
"(b) This board is created and established pursuant to Section
4.08 of the Home Rule Charter, and for the purpose of
facilitating the zoning powers granted by the Home Rule Charter
to the Board of County Commissioners, and to provide a board to
hear, consider and review appeals from the zoning regulations or
decisions of an administrative official, and to take appropriate
action as in this article provided and limited. * * *"
 * * * * * *
"Sec. 33-308. Zoning appeals board  Organization.
 "The director shall serve as secretary for the zoning appeals
board, shall be in attendance at all meetings as an advisor and
be permitted to propound questions and give evidence and shall
designate the time and place where it shall meet; provided, he
shall have authority to designate a staff member of the
department to act in his stead. * * * The chairman, or vice
chairman, or acting chairman, may administer oaths and compel the
attendance of witnesses in the same manner prescribed in the
metropolitan court. * * *
 "Minutes will be kept of all meetings and proceedings and shall
include and state the vote of each member on each question, and
the motion shall state the reason upon which it is made; such
reason or reasons being based upon the prescribed guides and
standards and good zoning and planning principles. * * * The
zoning appeals board shall keep accurate records of its public
hearings which shall be filed, together with its minutes and
resolutions, with the department. * * * is authorized to retain a
qualified reporter to record and transcribe the public hearing
proceedings of the zoning appeals board, and shall provide county
transportation for such board for the purpose of making
inspections of sites involved in zoning applications. * * *"
 * * * * * *
"Sec. 33-309. Zoning appeals board  Application.
 "All hearings before the zoning appeals board or the board of
county commissioners shall be initiated by the filing with the
department an application on forms prescribed by the director. *
* * Only applications which the zoning appeals board or the board
of county commissioners are authorized to consider and act upon
shall be accepted for filing."
 * * * * * *
"Sec. 33-310. Zoning appeals board  Notice and hearing
 prerequisite to action by the board.
 "(a) When an application has been filed hereunder, it shall be
promptly transmitted to the appropriate board, together with the
written recommendations of the directors of the building and
zoning and the planning departments or of the development impact
*20 committee, such recommendations to become a part of the hearing
file and record, and open for public inspection. No action on the
application shall be taken by the zoning appeals board or the
board of county commissioners until a public hearing has been
held upon at least fifteen (15) days' notice of the time and
place of such hearing published in a newspaper of general
circulation in Dade County. * * *"
 * * * * * *
"Sec. 33-311. Zoning appeals board  Authority and duties.
 "Except as otherwise provided by the ordinance, the zoning
appeals board shall have the authority and duty to consider and
act upon applications, as hereinafter set forth, after first
considering the written recommendations thereon of the directors
of the building and zoning and the planning departments, and such
board is advised that the purpose of zoning and regulations is to
provide a comprehensive plan and design to lessen the congestion
in the highways; to secure safety from fire, panic and other
dangers, to promote health, safety, morals, convenience and the
general welfare; to provide adequate light and air; to prevent
the over-crowding of land and water; to avoid undue concentration
of population; to facilitate the adequate provisions of
transportation, water, sewage, schools, parks and other public
requirements, with the view of giving reasonable consideration
among other things to the character of the district or area and
its peculiar suitability for particular uses and with a view to
conserving the value of buildings and property and encouraging
the most appropriate use of land and water throughout the county.
The zoning appeals board or any of its members may inspect the
premises and area under consideration."
 * * * * * *
"(d) Special exceptions, unusual, and new uses. Hear
application for and grant or deny special exceptions; that is,
those exceptions permitted by the regulations only upon approval
after public hearing, new uses and unusual uses which by the
regulations are only permitted upon approval after public
hearing; provided the applied for exception or use, including
exception for site or plot plan approval, in the opinion of the
zoning board, would not have an unfavorable effect on the economy
of Dade County, Florida, would not generate or result in
excessive noise or traffic, cause undue or excessive burden on
public facilities, including water, sewer, solid waste disposal,
recreation, transportation, streets, roads, highways or other
such facilities which have been constructed or which are planned
and budgeted for construction, are accessible by private or
public roads, streets or highways, tend to create a fire or other
equally or greater dangerous hazards, or provoke excessive
overcrowding or concentration of people or population, when
considering the necessity for and reasonableness of such applied
for exception or use in relation to the present and future
development of the area concerned and the compatibility of the
applied for exception or use with such area and its development."
 * * * * * *
"Sec. 33-312. Zoning appeals board  Decisions.
 "All decisions of the zoning appeals board shall be by
resolution. The decision, if for denial, shall specify whether it
is with or without prejudice. * * * Within fourteen (14) days,
but not thereafter, any decision of the zoning appeals board,
save and except a decision pertaining to a regulatory amendment
may be appealed to the board of county commissioners, as provided
by section 33-313 hereof, otherwise, it shall become final. * *
*"
 * * * * * *
 "It is hereby intended that the zoning appeals board's decision
concerning a requested regulation amendment shall be considered
only as a recommendation, which shall be transmitted, together
with the zoning appeals board's record on each such application,
to the board of county commissioners for final action by way of
approval, disapproval or modification pursuant to section 33-314
hereof. * * *"
"Sec. 33-313. Appeals to board of county commissioners.
*21 "Any appealable decision of the zoning appeals board may be
appealed by an applicant, governing body of any municipality if
affected, or any aggrieved party whose name appears in the record
of the zoning appeals board by filing with the department a
petition in a form prescribed by the director and a written
statement specifying in brief, concise language the grounds and
reasons for reversal of the ruling made by the zoning appeals
board, * * * whereupon, the director shall transmit to the county
commission the appeal papers, the decision and record of the
zoning appeals board. * * * Upon the taking of an appeal, the
county commission, after first hearing why the decision of the
zoning appeals board should or should not be sustained, shall
consider the appeal and by resolution either affirm, modify or
reverse the zoning appeals board's decision, and such action of
the county commission shall be by majority vote of all members
present, save and except when the action taken involves a
variance, be it before the county commission by way of appeal or
under its authority to consider an application containing a
request for a variance pursuant to sections 33-314 or 33-315
hereof or otherwise, the variance shall not be approved or
granted except upon a two-thirds vote of all the members present;
provided, no appeal shall be heard or considered until at least
fifteen (15) days' notice has been advertised in a newspaper of
general circulation in Dade County, identifying the appeal and
advising the time and place of the meeting at which the county
commission will hear, consider and take final action on such
appeal. * * *"
"Sec. 33-314. Finality of district boundary changes and
 regulation amendments.
 "(a) In addition to the powers set forth in sections 33-313 and
33-315, the board of county commissioners shall have the
authority and duty to directly hear and act upon applications for
the following matters:
 "(1) District boundary changes. The board shall hear
 and grant or deny applications for district boundary
 changes on individual pieces of property or on a
 neighborhood or area-wide basis.
 * * * * * *
 "(3) Where an application for district boundary
 change also contains a request for unusual use, new
 use, variance or special exception which is
 incidental or related thereto, or where there is
 pending on the same property or portion thereof more
 than one application for district boundary change,
 variance, special exception, unusual or new use, the
 said application or applications shall be heard in
 their entirety solely by the board of county
 commissioners and when possible acted upon at the
 same public hearing.
 "(b) The board, after hearing why the application should or
should not be granted, shall consider the matter in accordance
with the criteria specified in this chapter, and shall by
resolution either grant or deny the application. In granting any
variances, special exceptions, new uses or unusual uses, the
board of county commissioners may prescribe any reasonable
conditions, restrictions and limitations it deems necessary or
desirable in order to maintain the plan of the area and
compatibility therewith. Such action of the board of county
commissioners shall be final; provided, no such action shall be
taken until notice of time and place of the meeting at which the
board of county commissioners will consider and take final action
on the application has been first published as provided in
section 33-310 hereof. Anything in this article to the contrary
notwithstanding, when an application for a district boundary
change or special exception, new use, unusual use or variance is
filed by the director or planning director it will only be
decided by the county commission after receiving the
recommendations of the two (2) directors and after the required
noticed public hearing, and such decision shall then be final. *
*
 * * * * * *
 "(d) Recommendation of the zoning appeals board for or against
regulation amendments when received by the board of county
commissioners shall be considered and if it is determined to
amend the regulations
*22 in any manner, such amendment shall be enacted by ordinance as
provided by law. * * *"
"Sec. 33-315. Action by the board of county commissioners.
 "If an application is before the board of county commissioners
pursuant to this article, be it by way of appeal, recommendation
or otherwise, it shall have authority to consider and take final
action upon any and all matters and requests contained in the
application, any other provisions in this article
notwithstanding. In making any final decisions, the commission
shall be guided by the standards and guides applicable to the
zoning appeals board or as otherwise specified in this chapter.
It shall consider all relevant and material evidence offered to
show the impact of the development upon Metropolitan Dade County.
Detriments or benefits shall not be denied consideration on the
grounds that they are indirect, intangible or not readily
quantifiable. In evaluating the application, it shall consider
where applicable, among other factors related to the general
welfare, whether, and the extent to which:
 "(1) The development permitted by the application, if granted,
conforms to the comprehensive development master plan for
Metropolitan Dade County, Florida; is consistent with applicable
area or neighborhood studies or plans, and would serve a public
benefit warranting the granting of the application at the time it
is considered;
 "(2) The development permitted by the application, if granted,
will have a favorable or unfavorable impact on the environmental
and natural resources of Metropolitan Dade County, including
consideration of the means and estimated cost necessary to
minimize the adverse impacts; the extent to which alternatives to
alleviate adverse impacts may have a substantial impact on the
natural and human environment; and whether any irreversible or
irretrievable commitment of natural resources will occur as a
result of the proposed development;
 * * * * * *
 "The board of county commissioners may defer action on any
matter before it in order to inspect the site in question, to
refer the matter back to the zoning appeals board or the
developmental impact committee for further consideration and
recommendation, to refer the matter to any department for its
recommendation or for any other justifiable and reasonable
reason. When any final action has been taken by the board of
county commissioners, its record, together with a certified copy
of its minutes and resolution pertaining to such action shall be
transmitted to the department for filing, and the same shall be
open to the public for inspection at reasonable times and hours.
* * *"
"Sec. 33-316. Exhaustion of remedies; court review.
 "No person aggrieved by any zoning resolution, order,
requirement, decision or determination of an administrative
official or by any decision of the zoning appeals board may apply
to the court for relief unless he has first exhausted the
remedies provided for herein and taken all available steps
provided in this article. It is the intention of the board of
county commissioners that all steps as provided by this article
shall be taken before any application is made to the court for
relief; and no application shall be made to the court for relief
except from resolution adopted by the board of county
commissioners, pursuant to this article. Zoning resolutions of
the board of county commissioners shall be reviewed by the filing
of a petition for writ of certiorari in the Circuit Court of the
Eleventh Judicial Circuit in and for Dade County, Florida, in
accordance with the procedure and within the time provided by the
Florida Appellate Rules for the review of rulings of any
commission or board; and such time shall commence to run from the
date the zoning resolution sought to be reviewed is transmitted
to the clerk of the commission. * * The director of the building
and zoning department shall employ a qualified court reporter to
report the proceedings before the board of county commissioners
who shall transcribe his notes only at the request of the county
or other interested party, at the expense of the one making the
request.
*23 Such transcript, as well as the transcript of the proceedings
before the zoning appeals board, when certified by the reporter,
may be used in a court review of a matter in issue. * * *"
 * * * * * *

ON PETITION FOR REHEARING
PER CURIAM.
On petition for rehearing, the Board of County Commissioners contends that because of "boiler plate" language in the Commission's resolution, the record of the Zoning Appeals Board was before the County Commission.
A complete re-review of the testimony before the Commission reveals that at no time during the proceeding before the Board was it introduced in evidence or brought to the attention of the board. In fact, to demonstrate that the Commission was conducting a de novo hearing, the motion granting the relief to the property owners was as follows:
"* * * Mr. Mayor, I would like to move the recommendation of the Planning Department; approval subject to conditions." [R 120]
Therefore, the petition for rehearing is denied.
NOTES
[1] * * * * *
"The applicant is requesting an Unusual Use to permit a tennis club including eight tennis courts, two clubhouses, a swimming pool, and pro shop. A companion request is included for a Variance of height and setback requirements to permit three of the proposed tennis courts with 10' high fence (8' permitted) to setback 7 1/2' (15' required) from side (W) property line. "The subject property is 4.8 acres, is zoned EU-1 and lies between SW 75 Av., and Palmetto Expressway approximately 300' north of Sunset Drive. This single family estate area is completely developed and the proposed tennis club would be tantamount to a spot commercial use totally incompatible with the existing zoning and development in the area.
"A use of this type and magnitude would completely disrupt the estate use in the area. The activity, noise, traffic, etc. would destroy the peace and quiet of the estate residential neighborhood.
"No legal zoning hardship has been shown to warrant approval of the Variance request and the entire application should be denied with prejudice.
"The proposed club would provide membership for 160 families." [emphasis added]
* * * * * *
[2] * * * * *
"WHEREAS, upon due and proper consideration having been given to the matter, it is the opinion of this Board that the requested Unusual Use would not be compatible with the area and its development would not conform with the requirements and intent of the Zoning Procedure Ordinance; and that the requested Variance of Setback and Height Requirements would not be compatible with the area and its development and would not be in harmony with the general purpose and intent of the regulations and would not conform with the requirements and intent of the Zoning Procedure Ordinance;
"NOW THEREFORE BE IT RESOLVED by the Metropolitan Dade County Zoning Appeals Board that the requested Unusual Use be and the same is hereby denied with prejudice.
"BE IT FURTHER RESOLVED that the requested Variance be and the same is hereby denied with prejudice." [emphasis added]
* * * * * *
[3] Pertinent parts of the Code of Metropolitan Dade County, Florida, are filed with this opinion as an Appendix, pages A through F.
[4] Among other things, the petition alleged that: (1) The actions of the Commission constituted illegal spot zoning; (2) The applicant failed to show any essential need on behalf of the neighboring area for granting the unusual use permit or variances; and (3) The action of the Commission results in a breach of the integrity of the entire neighborhood in which the property involved is located.
[5] No reason was stated in the order, but if the trial court was correct for any reason revealed by the record this ruling will be sustained. Cohen v. Mohawk, Inc., 137 So.2d 222 (Fla. 1962); Rivello v. Cooper City, 322 So.2d 602 (Fla. 4th D.C.A. 1975); Aetna Insurance Company v. Settembrino, 324 So.2d 113 (Fla. 3rd D.C.A. 1976).
[6] * * * * *
"* * * Upon the taking of an appeal, the county commission, after first hearing why the decision of the zoning appeals board should or should not be sustained, shall consider the appeal and by resolution either affirm, modify or reverse the zoning appeals board's decision. * * *
* * * * * *
[7] Appellants urge that, because private tennis courts are permitted on the one-acre sites, a commercial tennis facility would be compatible with the neighborhood. We disagree. There is a difference of degree in the use of plus the profit motive in the one and not in the other.