476 So.2d 1359 (1985)
SARASOTA COUNTY, Florida, Petitioner,
v.
William D. PURSER and Lois B. Purser, Respondents.
No. 85-429.
District Court of Appeal of Florida, Second District.
October 16, 1985.
*1360 Richard L. Smith of Nelson, Hesse, Cyril, Smith, Widman and Herb, Sarasota, for petitioner.
Stanley Hendricks, P.A., Sarasota, for respondents.
RYDER, Chief Judge.
In 1983, the respondents filed a special exception petition to place a travel trailer park on a sixty-five acre parcel adjacent to the Myakka River. The entire parcel of land is within a flood-prone area and within a federally designated Area of Special Flood Hazard. The parcel has also been designated for rural uses with a maximum density of one dwelling unit per five acres. The respondents proposed a park which would consist of space for 350 travel trailers, a store, a recreation center, a laundry, an office, and a sewage treatment plant.
The staff report of the Planning Commission recommended approval of the special exception. After a hearing, the Board of County Commissioners adopted a resolution which denied respondents' petition. The circuit court subsequently granted respondents' petition for a writ of certiorari, quashed the denial, and remanded the case for further proceedings. Sarasota County then sought a writ of certiorari from this court. We grant the petition, issue the writ, and quash the action of the circuit court.
Florida case law conflicts over the question of which party bears the burden of proof in special exception proceedings. Some courts have held that the burden is upon the applicant to demonstrate that the proposed use would promote general public welfare and not conflict with public interest. Irvine v. Duval County Planning Commission, 466 So.2d 357, 360-61 (Fla. 1st DCA 1985); Board of County Commissioners of Dade County v. First Free Will Baptist Church, 374 So.2d 1055, 1056 (Fla. 3d DCA 1979). Other courts, including the Second District, have ruled that the applicant only needs to comply with the terms of the code, then the burden shifts to the zoning authorities to show that the granting of the exception would be adverse to the public interest. Conetta v. City of Sarasota, 400 So.2d 1051, 1052 (Fla. 2d DCA 1981); Rural New Town, Inc. v. Palm Beach County, 315 So.2d 478, 480 (Fla. 4th DCA 1975). However, the Florida Supreme Court has ruled that a statute which places the burden of proof upon the applicant is constitutional. Pylant v. Orange County, 328 So.2d 199, 201 (Fla. 1976). *1361 The First District has also recognized that an ordinance may cast the burden of proof upon either the applicant or the zoning authorities. Irvine, 466 So.2d at 361.
Under section 20 of the Sarasota County Zoning Code, a special exception is defined as a use "which if controlled as to number, area, location, or relation to the neighborhood, would promote the public health, safety, welfare, morals, order, comfort, convenience, appearance, prosperity or the general welfare." (Emphasis added.) Under section 20.1 of the Code, the applicant for a special exception bears the burden of demonstrating that the granting of the exception "will be in harmony with the general intent and purpose of these regulations, [and] will not be ... otherwise detrimental to the public welfare." (Emphasis added.) Additionally, the Code requires that "[w]here these zoning regulations place additional requirements on specific special exceptions, the petition should demonstrate that such requirements are met." Therefore, under the requirements of the Zoning Code, the respondents had the burden of proving that the proposed use of the property as a travel trailer park would promote the public welfare.
Under section 20.4 of the Code, the Planning Commission was required to make a written finding that the granting of a special exception would not adversely affect the public interest, that petitioner had met certain requirements governing that particular special exception, and that, among other things, satisfactory arrangements had been made for compliance with all elements of the Comprehensive Plan.
Section 8.10(c) of the Code, which pertains to travel trailer parks, states "no portion of the park subject to flooding, subsidence, or erosion shall be used for any purpose which would expose persons or property to hazards." The Planning Commission's staff report specifically stated that the property lies "within a flood-prone area, more specifically ... an Area of Special Flood Hazard." However, the report then stated that travel trailers are different from conventional residences, because they are not occupied year-round, can be evacuated safely and quickly, and would not actually flood until the water level reaches two to two and one-half feet. Based on this reasoning, the Planning Commission staff found compliance with all elements of the Comprehensive Plan. However, the report did not specifically address the requirement of section 8.10(c) which prohibits the use of a flood-prone area for any purpose which would expose persons or property to hazards. Rather, in acknowledging that flooding might occur, the staff report simply implied that if people and property moved quickly before an impending flood, they would not be exposed to any hazards. Additionally, the report did not address the fact that the store, recreation center, laundry, office, and sewage treatment plant would apparently be permanent structures incapable of being moved during an evacuation.
The Board of County Commissioners disagreed with the staff report, and made detailed findings of fact as to why the proposed use would be inconsistent with the objectives of the Comprehensive Plan and would not promote the general welfare.
The Board found that the use would be located within a federally designated area of special flood hazard, and enumerated how the use would be in conflict with certain objectives of the Future Land Use Plan, the Environmental Plan and the Sanitary Sewer Plan. Additionally, the Board found that because two other travel trailer parks were already located in the area, the addition of another 350-unit park would increase the density to more than twenty-five times the maximum specified for the area in the Comprehensive Plan.
The foregoing review of the Planning Commission's staff report and the Board's resolution reveals a conflict between each group's perception as to the adaptability of another travel trailer park in an area of flood hazard. However, under section 20.9 of the Zoning Code, the staff report was advisory only and was not binding on the Board of County Commissioners. Therefore, *1362 the Board had the final authority to determine whether the special exception should be granted.
The conditional language of section 20 specifically states that a special exception "may be permissible," thereby negating any argument that the respondents had an entitlement to a special exception merely by showing that they have met the requirements under the Code. Thus, even though an applicant for the special exception has met the burden of showing that the use would comply with the Zoning Code, the Board still has the discretion to decide whether the use, "if controlled," would promote the public welfare. Additionally, by the terms of the ordinance, one element in deciding whether a use would promote the public welfare is the consideration of the number of same uses already in existence. In this case, there were two other existing travel trailer parks in the area. Thus, there was a controversy as to the need for another travel trailer park in that area, and whether the park would promote the public welfare. In the final judgment, the court acknowledged that the Board was concerned about the location of the proposed park on the flood plain, and the over-abundance of trailer parks in the area. However, the court then found that all of the evidence led to the conclusion that the applicant met all the requirements for a special exception. (Emphasis added.)
The circuit court departed from the essential requirements of the law by quashing the Board's denial of the respondents' petition for a special exception. Where a court finds that there was a legitimate controversy before a zoning body, the court must uphold the zoning authorities' action. Marell v. Hardy, 450 So.2d 1207, 1211 (Fla. 4th DCA 1984). In this case, the circuit court dismissed the Board's concern about the location of the park in the flood plain by stating that problems would be manageable. The court further stated that the concern regarding the overabundance of parks in the area could be cured by a legislative change eliminating special exceptions. In this case, the court improperly acted as a "super zoning board" by substituting its judgment for that of the Board.
Zoning resolutions are presumed valid unless the zoning body abused its discretion by arbitrarily and unreasonably applying the resolution to a particular piece of property. Marell, 450 So.2d at 1211. Courts will not disturb a decision of the zoning authority if there is sufficient, competent evidence to support the decision. Bell v. City of Sarasota, 371 So.2d 525, 527 (Fla. 2d DCA 1979). Where there are conflicts in the evidence, the courts will uphold the resolution if the issue was "fairly debatable." Id.; Marell, 450 So.2d at 1211; Dade County v. Murphy, 322 So.2d 616 (Fla. 3d DCA 1975). But see Alachua County v. Eagle's Nest Farms, 473 So.2d 257 (Fla. 1st DCA 1985). A resolution is fairly debatable if the question is open to dispute or controversy on grounds that make sense. Under the fairly debatable rule, circuit court certiorari review is limited to determining whether a legitimate controversy existed before the zoning body. Marell, 450 So.2d at 1211.
In this case, the staff report admitted the proposed park was in a flood-prone area and that the floods might occur. The question of whether persons or property might be exposed to hazards was never directly addressed, other than to say the area could be evacuated quickly. However, the fact that an evacuation might be necessary implies that persons and property might be exposed to hazards. The Board's decision that another travel trailer park would not promote the public welfare is supported by the fact that two other parks already exist in the area, and an owner of one of those parks testified that his occupancy rate from May 1 to December 1 is about 35%. One of the two existing parks is outside the flood area. The other park was established prior to the creation of the flood zone. The staff report did not specifically address the fact that the granting of the special exception would increase the area's density to more than twenty-five times the maximum specified in the Comprehensive Plan, other *1363 than to state that travel trailer parks are permissible uses by special exception within this zoning district. Therefore, it was fairly debatable as to whether the park would expose persons or property to hazards, whether it would comply with all elements of the Comprehensive Plan, and whether it would promote the public welfare. These same facts also amounted to sufficient, competent evidence to support the Board's denial of the special exception.
Because there was sufficient, competent evidence that respondents had not met their burden of proof, the Board's denial of the special exception was not arbitrary, discriminatory, or unreasonable. Therefore, the circuit court erred in granting certiorari by which it quashed the Board's decision. The circuit court's order is quashed and set aside.
SCHEB and DANAHY, JJ., concur.