# BUCHHOLZ v CLEARWATER DEVELOPMENT CODE ADJUSTMENT BOARD and KEY SAND ASSOCIATES, LTD.

## Case No. 86-3696

State of Florida, Division of Administrative Hearings

February 17, 1987

### APPEARANCES OF COUNSEL

**R. Carlton Ward** for appellant.

**Kenneth E. Easley** for appellee Key Sand Associates, Ltd.

**Miles A. Lance** for appellee Clearwater Development Code Adjustment Board.

### OPINION OF THE COURT

J. LAWRENCE JOHNSTON, Hearing Officer.

## FINAL ORDER

In this case, Appellant, Walt Buchholz, appeals under Section 137.013, Clearwater Land Development Code (Code), from the decision of appellee Clearwater Development Code Adjustment Board (DCAB) to grant the application of appellee Key Sand Associates, Ltd. (Key Sand or applicant) for a 55 foot variance from the applicable 90 foot height restriction under the Code to enable Key Sand to build a 145 foot high condominium building on Sand Key. An appeal hearing was held in the case in Pinellas Park on January 23, 1987. The parties asked for and received until February 2, 1987, in which to file proposed findings of fact and conclusions of law.

## FINDINGS OF FACT

1. On July 24, 1986, Key Sand Associates, Ltd., by and through its agent, Eduardo Avila, made an application for a variance to the height limitation under the Code to allow a 145 foot building for 26 residential units, as described in plans submitted as part of the application.

2. A public hearing was set before the Development Code Adjustment Board (DCAB) for August 28, 1986. There was no evidence that notice was not published in the newspaper as provided by the Code or was not mailed to the owners of the adjacent properties within 200 feet of the subject parcel as shown by the latest ad valorem tax records.

3. On August 28, 1986, a public hearing was held before the DCAB at the time and place set forth in the notice. At the time of the hearing, minutes were kept and a tape recording was made.

4. The tape recording and minutes of the hearing reveal that the DCAB hard the testimony of: a planning official, Eduardo Avila, representing the applicant; Y. H. Lee, architect, representing the applicant; Mr. Carl G. Myers, President of the Sand Key Property Owners Association, an opponent; Sam Dervish, representing the adjacent property owner, Dervish Bros. Gallery Restaurant, an opponent; and, Ed Armstrong, an attorney representing the interests of the developer of the adjacent property of Crescent Beach Club I, an opponent. Two letters in opposition were read into the record.

5. At the conclusion of the public hearing before the DCAB, the DCAB found that the requirements for the variance under Section

137.012 of the Code had been met and granted the variance, as requested, by a vote of 4-1.[1]

6. On September 10, 1986, the appellant, Walt Bucholz, filed a notice of appeal with the City Clerk under the procedure provided in Section 137.013 of the Code. The notice of appeal alleged that Buchholz is "a resident and owner of unit 16A, 1340 Gulf Blvd., Clearwater, Florida," adjacent to the subject parcel. It further stated that the bases of the appeal were: (1) that the present owners of the adjacent property were not notified although the developer was; (2) that the applicant had misrepresented the facts at the hearing related to a representation about a blank wall on the condominium building in which Buchholz owned property; and (3) the naviety of the DCAB related to a display of model buildings by the applicant at the hearing.

7. A hearing on the appeal was set for January 23, 1987, and appropriate notice given. The appeal hearing was continued from December 29, 1986, to January 23, 1987, on Appellant's motion to enable Buchholz to be present at the hearing on the ground: "Appellant's presence at a hearing in this case is necessary for Appellant's testimony is essential to support his position."

8. The conduct of the appeal hearing was in accordance with Section 137.013(e) of the Code.

9. At the appeal hearing on January 23, 1987, the hearing officer accepted the record on appeal which had been transmitted by the City Clerk to the Department of Administrative Hearings on September 19, 1986, consisting of seven items, as required by Section 137.013(e)(2)a. of the Code.

10. The appellant did not present any witnesses nor introduce any evidence in support of the issues raised in his notice of appeal during the presentation of his case.[2] However, the appeal hearing reflected a concession by Key Sand that Buchholz owns a condominium unit in the Crescent Beach Club, less than 200 feet from the subject property, and did not receive notice because the City Clerk sent the notice to the owner according to the latest ad valorem tax roll, the developer of the Crescent Beach Club.

---

[1] Key Sand stipulated that the variance it was granted is contingent upon the plans for a 26 residential unit building it submitted as part of its application. Key Sand stipulated that it does not, and cannot, rely on the variance for a building with more than 26 residential units.

[2] Appellant offered Appellant's Exhibits 1 through 4 in evidence. But those exhibits were photographs used merely as an aid in the presentation of argument by Appellant's counsel. There was no testimony authenticating the photographs or otherwise predicating their use as evidence. Key Sand's objection to their admission is sustained.

11. Appellant's counsel argued that failure to provide notice to owners of adjacent property who became owners of the property after the publication of the last ad valorem tax roll was a procedural impropriety.

12. Appellant's counsel argued that the applicant had not presented sufficient evidence to support any of the required standards for approval of a variance at the August 28, 1986, hearing as required by Section 137.012 of the Code.

13. Key Sand argued that Appellant was not a party in interest as required under the Code, in that, (1) there was no showing that appellant was an adversely affected person with a definite interest exceeding the general interest shared by the rest of the community and (2) being a person who owns property within 200 feet of the subject property does not by itself prove an adverse interest to his property in granting the variance.

14. Appellant did not present even any argument during his case related to the second and third items of appeal set forth in the notice of appeal in this matter.

15. Appellant did not prove that the DCAB was deceived by the passing reference to a "blank wall" during the DCAB hearing or that the DCAB naively was deceived by the models displayed at the hearing. To the contrary, the record on appeal reflects that the DCAB was not deceived by the reference to a "blank wall" and that the DCAB critically weighed the display models along with all the other evidence.

## CONCLUSIONS OF LAW

1. Section 137.012 of the Clearwater Land Development Code (Code) provides for the procedure and standards under which the Development Code Adjustment Board (DCAB) considers applications for variances to alleviate hardships in carrying out the strict letter of the Code.

2. Under Section 137.012(c)(2) of the Code, the DCAB is required to hold a public hearing to "consider the application and render a decision at the conclusion of the public hearing."

3. In this case, Key Sand applied for a height variance to allow it to build a 145 foot high condominium on property on which the strict letter of the Code would not permit a building higher than 90 feet. The DCAB held a public hearing on August 28, 1986. At the conclusion of the hearing, the DCAB granted Key Sand's variance application.

A. *Appellant's Standing.*

4. Appellant, Walt Buchholz, did not appear or object to Key Sand's variance application before the conclusion of the August 28, 1986, public hearing. His written appeal alleges that he is "a resident and owner of unit 16A Crescent Beach Club, 1340 Gulf Blvd., Clearwater, Florida" and alleges that he and other owners of units in the Crescent Beach Club, other than the developer, did not receive notice of the August 28, 1986, public hearing. But Buchholz' written appeal was not verified, and Appellant presented no testimony or evidence at the appeal hearing on January 23, 1987 (although the appeal hearing was continued from December 29, 1986, to January 23, 1987, on Appellant's motion to enable Buchholz to be present and give testimony at the hearing.)

5. A substantial body of law has developed on the issue who has standing to go to court on a zoning dispute. See, *e.g., Skaggs-Albertson's v. ABC Liquors, Inc.,* 363 So.2d 1082 (Fla. 1978); *United States Steel Corp. v. Save Sand Key, Inc.,* 303 So.2d 9 (Fla. 1974); *Renard v. Dade County,* 261 So.2d 832 (Fla. 1972). But that case law does not limit a municipality in determining whom it chooses to hear in administrative zoning cases. *City of St. Petersburg v. St. Petersburg Yacht Club,* 352 So.2d 119, 120 (Fla. 2d DCA 1977). Cf. also Dore, *Access To Florida Administrative Proceedings,* 13 Fla. St. Univ. L. Rev. 965 (1986) (in which Professor Dore explains her position that access to state administrative proceedings under Chapter 120, Florida Statutes, should be controlled by the statute, not by case law on standing to go to court on controversies arising out of the administrative process.) That question is controlled by the local zoning or land development ordinances, not the case law on standing in court.

6. Section 137.013 of the Code, providing for "administrative relief" from decisions of the DCAB in variance application cases, is entitled: *Appeals* to the hearing officer." (Emphasis added.) Section 137.013(b) provides simply: "Any *party* in interest (including any representative of the city acting at the direction of the city manager) may *appeal a decision* rendered on an application for a variance or condition use to the hearing officer." (Emphasis added.)

7. In *City of St. Petersburg v. St. Petersburg Yacht Club, supra,* the initial administrative tribunal considering the yacht club's variance application (in that case, the Environmental Development Commission, or EDC) approved the application after due notice and hearing. A local citizens group (the NSNA), which neither appeared at the hearing nor raised any objection before the EDC's decision, appealed to the

City Council under the appeal procedure provided in the local ordinance. The City Council refused to dismiss the appeal, but the circuit court granted the yacht club's petition for writ of certiorari directing the City Council to dismiss the appeal. The City and NSNA appealed to the District Court of Appeal, Second District, which affirmed the issuance of the writ stating:

> We agree with the lower court that where the ordinance is silent as to who may appeal:

> > It is fundamental that a party litigant must object in an administrative hearing in order to properly under law perfect the right of appeal to a higher administrative tribunal. Consideration of such an appeal without an objection being lodged before the initial administrative body thereby permitting that body to have an opportunity to pass upon the grounds raised in the appeal constitutes a departure from the essential and fundamental requirements of law.

> See *Orlando Transit Co. v. Florida Railroad & Public Utilities Commission,* 160 Fla. 795, 37 So.2d 321 (1948).

*Id.* at 120.

8. The *City of St. Petersburg* decision and rationale would seem to preclude Buchholz' appeal in this case. But before that decision can be reached, two questions must be considered. The first question is whether the Code is at least "silent as to who may appeal" or whether the Code indicates that a nonparticipant in the public hearing before the DCAB, like Buchholz, can indeed appeal from the decision of the DCAB. The second is whether Buchholz had due notice of the DCAB hearing.

B. *The Nature Of This Appeal.*

9. As mentioned, the *City of St. Petersburg* rationale is applicable when the local ordinance is "silent as to who may appeal." Later, the *City of St. Petersburg* court cautions:

> [Our decision is] without prejudice, however, to the right of the City of St. Petersburg to amend its ordinances so as to properly authorize such civic or citizen organizations as the NSNA to be heard in the decision making process of city government. The holding of the lower court suggests that the city is prohibited from so doing and in this we disagree.

The nature of an appeal to a hearing officer from a DCAB decision on a variance application must therefore be considered to be sure it does not indeed "properly authorize" Buchholz' appeal.

10. If an appeal to a hearing officer from a DCAB decision on a variance application is a truly *de novo* proceeding, as Buchholz contends, it could be argued that anyone can initiate an "appeal" to a hearing officer whether or not they participated before the DCAB. In a truly *de novo* proceeding, the evidence is presented anew, and a new decision is made on the new evidence. For practical purposes, it is as if the earlier proceeding had not taken place.

11. The court decisions do not answer the question what kind of proceeding this appeal should be. They usually address the nature of the circuit court proceedings which arise only after exhaustion of all administrative remedies. Cf. *Planning And Zoning Board of Orange Park v. Kager,* 351 So.2d 402 (Fla. 1st DCA 1977); *Bird Road Baptist Church, Inc. v. Stevens,* 155 So.2d 420 (Fla. 3d DCA 1963). One older decision suggests that circuit court certiorari proceedings at that time were *de novo. Bd. of Adjustment of Ft. Lauderdale v. Kremer,* 139 So.2d 448 (Fla. 2d DCA 1962). But the more recent decisions uniformly hold that circuit court certiorari proceedings determine the issue whether the administrative decision provided procedural due process, observed the essential requirements of law and was supported by competent, substantial evidence. See *City of Deerfield Beach v. Vaillant,* 419 So.2d 624 (Fla. 1982); *Sarasota County v. Purser,* 476 So.2d 1359 (Fla. 2d DCA 1985); *Town of Indialantic v. Nance,* 400 So.2d 37 (Fla. 5th DCA 1981); *Bell v. City of Sarasota,* 371 So.2d 525 (Fla.2d DCA 1979). See also Rule 9.100, Florida Rules of Appellate Procedure, which now governs certiorari proceedings and makes no provision for the presentation of new evidence to the circuit court.

12. One decision does raise the exact question at hand in this case.[3] In *Bd. of County Commission of Metro. Dade County v. Lowas,* 348 So.2d 13 (Fla. 3d DCA 1977), an applicant for a variance appealed to the Board of County Commissioners after the Zoning Appeals Board (ZAB) denied the application. Under the procedures in Metropolitan Dade County, like those in the Code in this case, the Board of County Commissioners was required to "consider all relevant and material evidence." Referring to the appeal hearing, the *Lowas* court stated: "At that time, the Board of County Commissioners undertook a de novo hearing, *without any review of the evidence or exhibits introduced*

---

[3] The opinion in *City of Apopka v. Orange County,* 299 So.2d 657 (Fla. 4th DCA 1974), refers to a "de novo hearing" before the Board of County Commissioners on "appeal" from the Orange County Zoning Board of Adjustment. But the opinion does not address the precise issue of the nature of the "de novo hearing" and gives no detail on the "appeal" procedures in the local ordinance. It therefore is not very helpful on the issue at hand in this case.

204

*before the ZAB."* (Emphasis in the original.) *Id.* at 15. The Court held that it was reversible error for the Board of County Commissioners, in deciding an appeal from the ZAB, to not even consider the record made by the ZAB. But, pertinent to the issues in this case, the court also commented in *dicta:*

> Apparently, it can be argued that the Board of County Commissioners not only can receive evidence in those matters which must initially be brought before it [regulatory and district boundary changes], but may also receive evidence when considering a matter on appeal from the ZAB. It is obvious that if this interpretation is correct, both applicants and aggrieved citizens in many zoning controversies will be required to face two adversary hearings, and Section 33-313 is in conflict with Section 33-315. If this is the intention of the legislative fathers of the County, it should be spelled out with more clarity.

> .   .   .   .   .   .   .   .   .   .   .

> The word "appeal has a special meaning: it means to review the actions of a lower court or tribunal or agency. It is a plea to a higher supervisory body to reverse, alter, or modify a decision by a subordinate agency upon the record as made before that agency; generally, upon the proposition that the initial determination was not in accordance with law or regulations and/or that the decision was arrived at through bias or prejudice or that the decision of the subordinate agency was not supported by substantial competent evidence.

> .   .   .   .   .   .   .   .   .   .   .

*Id.* at 16-17.

13. For several reasons, it is concluded that the appeal hearing provided in Section 137.013 of the Code is not a *de novo* proceeding. First, the Assistant City Attorney has represented that the governmental agencies involved in this case (it not being clear from the record which governmental agency he was representing) do not interpret the "appeal" to mean a *de novo* proceeding, and that interpretation is entitled to weight. See Section 131.011 of the Code. Second, as the *Lowas* court noted, use of the word "appeal" is inconsistent with a *de novo* proceeding. Section 137.013(c)(2) requires: "The notice of appeal shall set forth in detail the basis of the appeal." Under Section 137.013, the hearing officer is only "to adjudicate matters as may be appealed. . . ." If a *de novo* proceeding were intended, it should have been expressly provided. Third, under Section 137.013(e)(2), the hearing officer first receives the tapes, minutes and exhibits from the [lower

administrative tribunal], the appellant presents his case before the appellee regardless whether the appellant was the applicant below, and each side is allowed only one hour for presentation of his case. These procedures would suggest an appellate-type proceeding, not a *de novo* proceeding. And finally it is concluded that if the City of Clearwater had intended to permit a hearing officer to substitute his judgment in zoning matters for the judgment of the DCAB, the local administrative body constituted just for that purpose, it would have said so expressly in Section 137.013 of the Code. A significant difference is seen between the *express* provision for *de novo* review of DCAB decisions by the local, elected Clearwater City Commission, as done in previous editions of the Code, and the inference of *de novo* review by a hearing officer which Appellant argues should be drawn from the version of the Code now in effect.

14. Despite the conclusion drawn in the preceding paragraphs, it is conceded that the Code is less than clear what type of appeal hearing should be conducted under Section 137.013. While not *de novo,* it does provide for the swearing of witnesses, the hearing of sworn testimony and evidence by direct and cross examination, the determination of admissibility of evidence and the finding of facts by the hearing officer. These provisions do not at first blush seem consistent with an appeal-type proceeding. The *Lowas* court asked itself a similar question but did not have to answer it in light of its holding. It is concluded that new testimony and evidence presented to the hearing officer under Section 137.013 is admissible only to the extent of its relevance to the issues raised on appeal. For example, two issues raised in this appeal—appellant's standing and the sufficiency of the notice of the DCAB hearing—require evidence to be presented to the hearing officer (although none was presented in this case.) Evidence also would be admissible on appeal if relevant to the limited issue raised on appeal whether the DCAB's findings were based on competent substantial evidence. But new evidence on the issues before the DCAB would not be admissible since the hearing officer cannot substitute his judgment for the judgment of DCAB.

C. *Sufficiency of Notice.*

15. The appeal hearing reflects a concession by Key Sand that Buchholz owns a condominium unit in the Crescent Beach Club, less than 200 feet from the subject property, and did not receive notice because the City Clerk sent the notice to the owner according to the latest ad valorem tax roll, the developer of the Crescent Beach Club.

16. Section 137.012(c)(1) of the Code, governing variance procedures before the DCAB, provides:

206

> The development code administrator shall, upon determination that the application complies with all applicable submission requirements, receive the application and instruct the city clerk to schedule it for public hearing by the development code adjustment board and give notice of such hearing in accord with the requirements contained in Article V of this chapter.

Article V of Chapter 137, Section 137.024, provides for notice by newspaper publication. In addition, Section 137.025 provides in pertinent part:

> The city clerk shall be required to provide notice by mail of any public hearing to all owners of property within two hundred (200) feet of the periphery of a property, including notice to the owner of such property, which is the subject of any application requesting a . . . variance. . . .

Unlike prior versions of the Code, Section 137.025 does not specify that the City Clerk is only required to send the notice to "the last known names and addresses of owners as indicated on the latest tax rolls of Pinellas County." Accordingly, by the express terms of current Section 137.025 of the Code, the City Clerk is required to give notice to the actual owners, whether or not reflected on the latest ad valorem tax rolls.

17. It is recognized that Section 166.041(3)(c), Florida Statutes (1985), provides for notice to interested property owners as reflected "by reference to the latest ad valorem tax records." But that statute, by its terms, applies only to enactment of zoning ordinances. In addition, Section 166.041(6) authorizes a municipality to adopt notice requirements that are stricter than the minimum requirements set out in Section 166. It must be concluded this is what the City of Clearwater has done in its current Code.

18. Nonetheless, Buchholz presented no testimony or evidence at the appeal hearing on either the issue of his standing or the issue of sufficiency of notice. Without his testimony, the record does not establish whether Buchholz had actual notice of the DCAB hearing. The record therefore is not sufficient to excuse Buchholz' failure to appear at the DCAB public hearing or object to Key Sand's variance application before the DCAB decision so as to enable Buchholz to successfully appeal to a hearing officer.

19. In addition, assuming Buchholz had proved he had no actual notice, the decision in *City of Apopka v. Orange County,* 299 So.2d 657, 659-660 (Fla. 4th DCA 1974), points out that the purpose of

207

notice of a variance application hearing is to give interested parties the opportunity to present *evidence* on the relevant *facts,* not to express opinions and desires. Buchholz presented no evidence of any kind at the appeal hearing, and his appeal gives no indication of the evidence he would have presented to the DCAB. It therefore cannot be determined that the DCAB decision should be reversed because of lack of notice to Buchholz.

D. *The Other Issues On Appeal.*

20. Even if Buchholz had standing to appeal to the hearing officer, his appeal is limited to the "matters as may be appealed"—namely, the "basis of the appeal," which must be "set forth in detail" in the notice of appeal. The notice of appeal in this case sets forth only two bases, other than the notice issue: the alleged misrepresentation about a "blank wall"; and the alleged "naivety" of the board in response to allegedly misleading display models. But the record on appeal reflects that the DCAB was not deceived by the passing reference to a "blank wall" and reflects that the DCAB critically weighed the display models along with all the other evidence. Buchholz certainly did not establish the contrary at the appeal hearing. There was no evidence or even argument on these issues presented at the appeal hearing.

21. Buchholz' appeal did not properly raise and preserve the issue whether the DCAB's findings were supported by competent, substantial evidence. It is not necessary to find or conclude in this appeal, whether Appellant has met his burden of establishing that the DCAB decision was not supported by competent, substantial evidence.

## DISPOSITION

Based on the foregoing Findings Of Fact and Conclusions Of Law, it is

ORDERED:

That the appeal of Walt Buchholz in this case be dismissed and the decision of the DCAB granting the variance application of Key Sand be affirmed.

DONE AND ORDERED this 17th day of February, 1987 in Tallahassee, Leon County, Florida.